**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IRENE ASUQUO ANDERSON,** | ) | |
| ID # 37393-177, | ) | |
| Movant, | ) | No. 3:10-CV-0227-B-BH |
| vs. | ) | No. 3:08-CR-134-B |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | Referred to U.S. Magistrate Judge |
| Respondent. | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this action has been referred for findings, conclusions, and recommendation.

**I. BACKGROUND**

Irene Asuquo Anderson ("Movant"), an inmate currently incarcerated in the federal prison system, filed a *Motion to Vacate, Set Aside, or Correct Sentence* ("Mot.") pursuant to 28 U.S.C. § 2255 to challenge her federal conviction and sentence in Cause No. 3:08-CR-134-B. The respondent is the United States of America ("Government").

**A.    Plea and Sentencing**

On May 6, 2008, movant was charged by indictment with: 1) unlawful procurement of naturalization in violation of 18 U.S.C. § 1425(b); 2) a false statement to a government agency in violation of 18 U.S.C. § 1001; and 3) aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2, 1341. (*See* Indictment, doc. 7).[1]  On August 21, 2008, movant pled guilty to the mail fraud charge pursuant to a plea agreement. (*See* Rearraignment Hearing Transcript at pp.16-17; Plea Agreement, doc. 20).  Movant also signed a factual resume admitting facts sufficient to support her plea. (*See* Factual Resume, doc. 19).  In her plea agreement, movant waived the right to contest her conviction

---

[1] Unless otherwise noted, all document numbers refer to the docket number assigned in the underlying criminal action.

and sentence in any collateral proceeding, except to challenge the voluntariness of her plea or waiver and to bring a claim of ineffective assistance of counsel. (doc. 20 at p. 6).

After a sentencing hearing on September 15, 2008, the district court entered judgment on movant's guilty plea and sentenced her to 46 months imprisonment, to be followed by three years supervised release. (*See* Judgment, doc. 30). Movant's subsequent appeal was dismissed by the Fifth Circuit Court of Appeals as frivolous. *United States v. Anderson*, 2009 WL 4885095 (5th Cir. Dec. 15, 2009).

**B.     Substantive Claims**

Movant filed her motion to vacate on February 4, 2010. She claims that her trial attorney was ineffective at her sentencing hearing by: 1) failing to object to the calculation of restitution, which was based on an erroneous loss amount; 2) failing to ensure that the loss amount was calculated correctly; 3) failing to object to a two-level enhancement for having an aggravating role in the crime; and 4) failing to file a defense sentencing memorandum to refute information contained in the pre-sentencing report and to provide information in support of movant. The government filed a response brief on April 7, 2010. (*See* Resp. Opp'n Mot. ("Resp.")). Movant filed a reply brief on May 4, 2010 (*See* Rebuttal in Response ("Reply").

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir.

1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the asserted error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies when a prisoner alleges denial of effective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).

When a prisoner challenges his plea based on ineffective assistance of counsel, the "preju-

dice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58. To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* To show prejudice in the sentencing context, the movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

**A.**     **Restitution Amount**

Movant contends that her attorney was ineffective for failing to object to the amount of restitution she was ordered to pay. Movant contends that the amount as computed in the pre-sentence report (PSR) and accepted by the Court is "erroneous" because the probation officer failed to deduct from that amount the value of services movant provided as the owner of home health agencies. (Motion at 5).

The Fifth Circuit has held that a claim that counsel was ineffective for failing to challenge a fine is not cognizable in a § 2255 motion because it is not related to unlawful custody. *United*

4

*States v. Segler*, 37 F.3d 1131, 1136-37 (5th Cir. 1994). The prejudice prong of the *Strickland* standard can not be met because a § 2255 movant cannot show that any harm she may have incurred from any failure to challenge a fine relates to her custody. *Id*. at 1138. Citing to *Segler*, albeit in an unpublished case, the Fifth Circuit has also held that a claim that counsel is ineffective for failing to challenge a restitution amount falls outside the scope of a § 2255 action because, like fines, restitution does not relate to a movant's incarceration. *United States v. Walker*, 78 F.3d 582 at *3 (5th Cir. Feb. 2, 1996). Movant's claim that her attorney was ineffective for failing to object to the amount of restitution order is not a cognizable in a § 2255 motion. *See United States v. Paris*, 2009 WL 3199512, slip op. at *6 (N.D. Tex. Oct. 5, 2009) (holding that a claim of ineffective assistance of counsel based upon restitution imposed at sentencing is not cognizable in a § 2255 action because it does not relate to unlawful custody).

Even if this claim was cognizable, it is without merit. The plea agreement that movant signed specifically states that the parties have agreed that an appropriate sentence in movant's case would include an order of restitution in the amount of $2,276,622.31. (doc. 20, Plea Agreement, ¶ 7). At the rearraignment hearing, movant stated under oath that she understood all parts of the plea agreement and agreed to everything in the agreement. (Rearraignment hearing at 5). Movant's counsel was therefore not ineffective for failing to object to a restitution amount that movant agreed to in her plea agreement and under oath at the rearraignment hearing.

**B.**    **Calculation of Loss Amount**

Movant claims that her attorney was ineffective for failing to object to the method of calculation of the loss amount. She asserts that her attorney should have objected on the basis that the loss amount should have been reduced by the cost of actual services provided by movant to her

5

home health care clients.

The pre-sentence report (PSR) noted that movant opened a home health care agency in 2001, AG Total Home Health Services, Inc., of which she was the owner and operator and for which she obtained a Medicare provider number that was used to submit claims and receive payments on the claims. Beginning in 2004, movant opened and operated a second home health agency, New Dimensions, for which she also obtained a Medicare provider number. However, this provider number was obtained under a fictitious name, and movant represented to employees and others that the owner of New Dimensions was Iya Edwards, even though movant was the true owner. (PSR, ¶¶ 14-16). The PSR also states that an investigation determined that patients for both AG Total Home Health Care and New Dimensions who were insulin-dependent diabetics were not being seen by a nurse, as required per regulations, twice a day, seven days a week, that movant instructed nurses from AG Total Care to generate fictitious progress notes for patients not being seen, and that movant shifted insulin-dependent diabetic patients between the two agencies in order to conceal that fact that patients were not being seen as required. (PSR, ¶¶ 18, 20). The loss amount to Medicare from movant's fraud was determined to be $2,276,622.31 based on the fact that movant billed and received "$1,087,923.57 from Medicare for 21 of AG Total Care patients and $1,188,698.74 for 9 New Dimension patients." (PSR, ¶¶ 23-24, 30).

In the document entitled "Elements of Offense and Factual Resume" signed by movant, she admitted that she opened a home health agency named New Dimension Healthcare Services under a false name, represented to Medicare that the agency was owned by a fictitious person rather than by her, obtained a Medicare provider number in 2005 for this agency, and from March of 2005 to April of 2008 received payments from Medicare to New Dimension totaling $1,188,698.74. (doc.

6

19, Factual Resume at 2-4). Movant further admitted in the factual resume that she knowingly and willfully executed a scheme and artifice to defraud the United States Department of Health and Human Services and Medicare and to obtain money and property owned by Medicare by applying for and obtaining a Medicare provider number for New Dimension by falsely representing that it was owned by a fictitious person. (Factual Resume at 2). At the rearraignment hearing, movant stated that she had reviewed the factual resume with her attorney, and that she understood and agreed to every portion of the factual resume. (Rearraignment hearing at 15-16).

Movant claims that the loss amount is not correct because two-thirds of her patients were seen "faithfully", and that the loss amount should only have included Medicare claims filed for the one-third of patients who were not seen by nurses. (Reply at 3). Movant further asserts in her reply that claims filed under the home health agency AG Total Care Home Health Services, Inc. were not filed in an attempt to defraud Medicare. (Reply at 3).

A PSR generally "bears sufficient indicia of reliability, such that a sentencing judge may consider it as evidence in making the factual determinations required by the Sentencing Guidelines", *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999). While "a district court must resolve disputed issues of fact if it intends to use those facts as a basis for sentencing, the court can adopt facts contained in a PSR without inquiry, if those facts ha[ve] an adequate evidentiary basis and the defendant does not present rebuttal evidence." *Id.* (quoting *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994)). Furthermore, "[a] defendant's rebuttal evidence must demonstrate that the information contained in the PSR is 'materially untrue, inaccurate or unreliable,' and '[m]ere objections do not suffice as competent rebuttal evidence.'" *Id.* (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998)).

7

In support of her claim that her attorney was ineffective for failing to object on the basis that the loss amount was calculated incorrectly, movant asserts that two-thirds of her patients were seen faithfully but provides no support for this claim. The Court properly relied upon the loss amount stated in the PSR because it had an adequate evidentiary basis and because movant presented no rebuttal evidence against the calculation. The loss amount about which movant now complains is the same amount that she agreed in her plea agreement with the government was appropriate. Without any evidence that the information contained in the PSR is untrue, inaccurate, or unreliable, defense counsel cannot be considered ineffective for failing to assert an objection to the loss amount. Because movant has provided nothing to demonstrate that the information contained in the PSR is materially untrue, inaccurate, or unreliable, any objection to the calculation would have been denied. Therefore, counsel was not ineffective for failing to object on this basis at sentencing. *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

Moreover, movant has failed to establish any prejudice as a result of her attorney's failure to object to the calculation of the loss amount. Movant acknowledged in the factual resume that she received payments totaling $1,188,698.74 for the New Dimensions home health care agency, payments which she admitted the agency received after obtaining a Medicare provider number under a fictitious name, although she was the true owner. Movant received these payments for a period of three years by billing Medicare for services using the provider number issued to a fictitious person, thereby misrepresenting to Medicare that someone other than herself was the owner of New Dimension. Because movant fraudulently obtained these payments from Medicare, this was a loss amount for Medicare. As noted in the PSR, under USSG § 2B1.1(b)(1)(I), if a loss amount is more

8

than $1,000,00, but less than $2,500,000, sixteen levels are added to the base offense level. (PSR, ¶ 30). This was what occurred in movant's case. (PSR, pp. 6-7; Sentencing hearing at 11-12). Therefore, regardless of how the remaining portion of the loss amount was calculated, the amount movant fraudulently obtained from Medicare for New Dimensions alone results in her base offense level being raised sixteen levels. At sentencing, after the Court granted a government motion to reduce the offense level by one, movant's sentencing range was between 46 and 57 months. (Sentencing hearing at 14). After determining that a downward departure from this sentencing range was not warranted in this case, the Court sentenced movant to the lowest level of the guideline range in sentencing movant to 46 months' imprisonment. (*Id*. at 16). Accordingly, movant has not shown a reasonable probability that, even had her attorney objected to the calculation of the loss amount and succeeded in having the amount lowered to only reflect the loss Medicare incurred from claims filed on behalf of New Dimensions, she would have been sentenced to a lesser sentence. *See United States v. Taylor*, 582 F.3d 558, (5th Cir. 2009), *cert. denied*, 130 S.Ct. 1116 (2010) (holding that, even were the loss amount reduced as argued by Taylor, any error was harmless because the total loss calculation would have been between the same guidelines range). Movant has therefore failed to establish either prong of the *Strickland* standard with respect to this claim, and this claim is without merit.

**C.    Sentence Enhancement**

Movant next contends that her trial counsel was ineffective for failing to object at sentencing to a two-level sentence enhancement. She acknowledges that her attorney objected to the enhancement she received under U.S.S.G.. § 3B1.1(c) for being an organizer in the offense, but she claims that her attorney should have objected when relevant conduct was used to apply this

9

enhancement. (Motion at 6). Movant also claims that her attorney was ineffective for failing to object to the Court's failure to make findings with regard to the defense's objection to the sentence enhancement. *Id*.

The PSR recommended a two-level sentence enhancement on the basis that movant was an organizer in criminal activity. (PSR, ¶ 33). Defense counsel filed an objection to this paragraph on the grounds that movant did not organize two or more individuals for the purpose of misrepresenting her true identity or in applying to be a Medicare health provider. (*See* Objections to PSR). The addendum to the PSR reflected acceptance of movant's assertion that she did not organize two or more individuals for the purpose of misrepresenting her identity or in applying to be a Medicare health provider. It noted, however, that movant did instruct her staff to generate fictitious progress notes on patients in order to file claims to Medicare for patient visits that were not actually conducted and that movant paid at least two individuals to recruit patients to participate in her scheme. Based on this information, a two-level enhancement under U.S.S.G. § 3B1.1(c) was still found to be warranted. (*See* PSR ¶ 33, Addendum at 1-2). Defense counsel then filed "Objections to the Addendum to the Presentence Investigation Report" on November 12, 2008.

At the sentencing hearing, the Court acknowledged defense counsel's objection to the PSR and subsequent objection to the addendum. (Sentencing Hearing at 9-11). It then made the following statement:

> The Court has reviewed, of course, the motion, the guideline provisions that are applicable and the government's response and denies the request for the two – overrules the objection with regard to the two points under 3B1.1.
> The Court agrees with the presentence addendum, as well as the presentence report and the government's analysis of the lack of propriety under the advisory guideline provisions of the defense's position.
> So with that, the Court overrules the objection by Ms. Anderson to the presentence report, specifically with regard to the two-level enhancement for her role

10

>in the offense under guideline provision 3B1.1 of the advisory guideline range, so that objection is overruled.

(Sentencing Hearing at 11-12).

Defense counsel did object to the two-level enhancement and continued to object to the two-level enhancement after the probation officer clarified in the addendum to the PSR that the enhancement was based on movant's relevant conduct, rather than the offense to which she pled guilty. Furthermore, findings overruling defense counsel's objection were made on the record. Counsel need not assert and pursue frivolous objections or challenges to render effective assistance. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). Counsel was not ineffective for failing to make any further objection with regard to this enhancement.

**D.     Sentencing Memorandum**

Finally, movant asserts that her attorney was ineffective for failing to file a sentencing memorandum to refute some of the information contained in the PSR and give supportive information about movant. (Motion at 6). Movant contends that a memorandum would have served to correct items in the PSR, such as statements regarding the amount of restitution and her role as an organizer in the offense. As noted earlier, however, movant signed a plea agreement agreeing to the amount of restitution stated in the PSR and assessed by the Court, and defense counsel did object to the two-level sentence enhancement assessed after a determination that movant was an organizer. Movant has not shown that her attorney was ineffective for failing to file a sentencing memorandum to argue a frivolous point or to raise an objection that was already made. This claim is therefore without merit.

### IV. EVIDENTIARY HEARING

Upon review of the motion to vacate and the files and records of this case, an evidentiary

11

hearing appears unnecessary. No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Here, the record conclusively shows that Movant is entitled to no relief.

## V. RECOMMENDATION

The *Motion to Vacate, Set Aside, or Correct Sentence* pursuant to 28 U.S.C. § 2255 should be **DENIED** with prejudice.

**SIGNED this 10th day of May, 2010.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE